**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ROBBY LYNN DAVIDSON** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:07-0047** |
| | ) | **Judge Echols** |
| **JIM MORROW, WARDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

# MEMORANDUM

Petitioner is serving two consecutive twenty-five years sentences for his convictions on two counts of second degree murder. He filed the instant action under 28 U.S.C. § 2254 seeking a writ of habeas corpus. The Magistrate Judge has entered a Report and Recommendation ("R & R") (Docket Entry No. 24), recommending that the Motion to Dismiss filed by the Respondent (Docket Entry No. 17) be granted and this case be dismissed. The Petitioner has filed a "Motion for Objection to Report and Recommendation," (Docket Entry No. 26), consisting of his objections to the R & R.

## I. STANDARD OF REVIEW

Upon review of an R & R, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.J. 9(b)(3). See, Fed.R.Civ.P. 72(b).



Case 2:07-cv-00047 Document 27 Filed 08/27/08 Page 1 of 11 PageID #: 3255

## II. DISCUSSION

Petitioner presented seven claims for relief in his habeas petition. The Magistrate Judge found that two evidentiary claims (Claims 3 and 4) and a sentencing claim (Claim 5) were not cognizable because they revolved around questions of state law and there was no showing that the state court's ruling with respect to those claims suggested any violation of the Constitution or federal law. The Magistrate Judge also found that two of Petitioner's claims (Claim 6 relating to certain prosecutorial misconduct, and Claim 7 relating to a specific claim of ineffective assistance of counsel) were not raised in the state court and thus were procedurally defaulted. Finally, the Magistrate Judge found that Petitioner was entitled to no relief on his two remaining claims which alleged insufficiency of the evidence (Claim 1) and the denial of a fair and impartial trial (Claim 2).

Petitioner has filed six objections to the R & R. They will be considered under separate sub-headings.

### A. Objection 1

In the R & R, the Magistrate Judge noted Petitioner had not responded to the Motion to Dismiss filed by Respondent. In his first objection, Petitioner states "[t]he reason petitioner failed to respond to respondent[']s Motion to Dismiss is the absence of a directive pursuant to rule 5 (e) by the court." (Docket Entry No. 26 at 2).

Presumably, Petitioner is referring to Rule 5(e) of the Rules Governing Section 2254 Cases which provides that "[t]he petitioner may submit a reply to respondent's answer or other pleading within a time fixed by the judge." However, a Motion to Dismiss is not a responsive pleading within the meaning of the Federal Rules of Civil Procedure, see, Youn v. Track, Inc., 324 F.3d 409, 416 n.6 (6th Cir. 2003)(collecting cases), and, in any event, Rule 5(a) which requires an Answer only

upon order of a court "does not address the practice in some districts, where the respondent files a pre-answer motion to dismiss the petition." Rule 5, Rule Governing Section 2254 Cases, Adv. Comm. Notes, 2004 Amendments.

In this case, Respondent did not file an Answer, but instead chose to file a Motion to Dismiss. Under this Court's Local Rule 7.01(b), any response to the Motion to Dismiss was due within ten days after service. This objection is overruled.

**B. <u>Objection 2</u>**

Petitioner next asserts the Magistrate Judge erred in stating that the issue of Juror Ms. Dale Ford's ("Juror Ford's") impartiality was not presented on direct appeal and consequently Petitioner's claim that he was deprived of a fair trial because she was allowed to sit on the jury was not considered by the state courts. While the Magistrate Judge did incorrectly state Juror Ford was not challenged on direct appeal,[1] this objection will be overruled because Juror Ford's presence on the jury did not deprive Petitioner of a fair trial.

The record reflects that the impartiality of Juror Ford was raised in Petitioner's brief filed on direct appeal of his conviction with the Tennessee Court of Criminal Appeals. Specifically , in his brief, counsel for Petitioner wrote:

> . . . Another juror that heard this case was Ms. Dale Ford. Ms. Ford stated that she did not think she could set aside what she heard. When asked if she could be impartial by the Court she stated, "I guess, I really don't know." The Trial Court then asked her if she would try and she replied that she would if the Trial Court made her. She said that if the Trial Court asked her to try she would, she guessed. (Voir Dire, Tr. Vol. 111, pp. 262-263). Ms. Ford responded to counsel for Appellant that

---

[1]In the R & R, the Magistrate Judge stated Petitioner only identified three jurors (Chris Crabtree, Jackie Jones, and Steven Bilbery) on direct appeal and did not challenge the impartiality of Juror Ford. (Docket Entry No. 24 at 9 n. 4).

she could not promise to set aside all that she had heard and decide the case on the proof (Voir Dire, Tr. Vol. IV, p. 319).

(Addendum 14, Appellant's Brief at 9-10). In its opinion on direct appeal, the Tennessee Court of Criminal Appeals mentioned the impartiality of some jurors, but not Juror Ford. This prompted counsel for Petitioner to file a petition for rehearing, claiming that Juror Ford was not mentioned in the original opinion. The Tennessee Court of Criminal Appeals then addressed the impartiality of Juror Ford, found no error in her remaining on the jury, and denied the petition for rehearing. (Addendum 18 at 1). Thus, Juror Ford was in fact addressed on direct review of Petitioner's convictions and the question becomes whether Petitioner was denied a fair trial because Juror Ford sat on his case.

Under the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed the right to a fair and impartial jury. Morgan v. Illinois, 504 U.S. 719, 727 (1992). Therefore, a court is required to excuse a prospective juror if it is determined during voir dire that the juror has an actual bias[2] against the defendant or the case. Hughes v. United States, 258 F.3d 453, 459 (6th Cir. 2001). However, "[a] juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias." Id. at 458. Instead, the question to be answered is whether the juror has indicated the ability to set aside any preconceived notions and render a verdict based on the evidence. Miller v. Webb, 385 F.3d 666, 673 (6th Cir. 2004).

[2]In "extreme or exceptional cases," bias may be implied or presumed, such as where the juror is an employee of the prosecuting agency, a close relative of a participant in the trial, or a witness to the crime at issue. Johnson v. Luoma, 425 F.3d 318, 326 (6th Cir. 2005). In such cases, bias is presumed or implied from the fact that no reasonable person in such a situation could be considered to be impartial. Id. This case does not present an issue of implied or presumed bias.

During voir dire, Juror Ford indicated she heard about the case through "rumors," and what she read in the newspapers. When the judge told her that "talk is not proof in the case," Juror Ford replied, "Yeah, it's just rumors." (Addendum 22, Voir Dire Tr. 262). When asked by the judge if she thought she could set aside what she heard and not let it influence her verdict, the following colloquy occurred:

> Juror: I suppose I could.
>
> The Court: Have you formed any opinion about the case based upon –
>
> Juror: No, sir.
>
> The Court: Do you have a little bit of hesitancy? In saying I suppose I could, obviously, it's not going to be easy; but do you feel comfortable with your ability to set aside that and just decide the case on the proof?
>
> Juror: No. I don't feel comfortable with my ability to forget everything I've heard; no.
>
> The Court: If you were instructed to disregard what you heard before, do you think you could follow those instructions and decide this case fairly and impartially based upon this proof?
>
> Juror: I guess. I really don't know.
>
> The Court: Would you try to do that, ma'am?
>
> Juror: Yeah; if you make me.
>
> The Court: I can't make you.
>
> Juror: If you told me to, I'd try, I guess.

(Id. at 263). Later, counsel for Petitioner examined Juror Ford and, after noting the case had been thoroughly covered in the newspaper, the following exchange occurred:

> Mr. Little: Okay. Now, with all of these questions that these crazy lawyers have asked you and got up here talking and all that stuff, are you wondering now if you were absolutely right [about a murder having actually occurred]?

Juror: Yes.

Mr. Little: Can you put that totally aside? Will you listen if you're on the jury?

Juror: I can't promise you that I can. All I can promise you is that I will try my best.

Mr. Little: But you can't promise:

Juror: No.

(Id. at 319). Still later, counsel for Petitioner questioned Juror Ford again in the following exchange:

> Mr. Little: Okay. Now, Ms. Ford, if you were selected on the jury, which you are right now, I believe the proof will show that during the course of the investigation the TBI or the crime scene group or whatever, anyway, a branch of the TBI took numerous and many samples of the scene and have very scientific examination as made for the purpose of discovering accelerant in the car. And will you listen to the proof and see what they tell you about the results of all these exotic examinations that they made of the crime scene in the hopes of finding accelerant in the car?
>
> Juror: Yes sir.
>
> Mr. Little: And if that is noticeably in their reports that they found no evidence of accelerant, will that weigh in your decision on actually what might have happened out there?
>
> Juror: Yes sir.
>
> *　　　*　　　*
>
> Mr. Little: If the State introduces proof that the TBI investigation made numerous tests, tire tests at the scene and then conducted an extensive examination comparison examination of these tire tests, their tire tracks that they found and that they were never able to match those up, will you listen to the proof and see if they were ever able to match those tire tracks up, and if they were unable to do so, will you consider that in making your decision of guilt or innocence?
>
> Juror: Yes, sir.

(Id. at 348-49). Based upon the voir dire examination, the trial judge refused to dismiss Juror Ford for cause.



Case 2:07-cv-00047 Document 27 Filed 08/27/08 Page 6 of 11 PageID #: 3260

As a general rule, a habeas court "normally defer[s] to the assessment of the trial judge, who hears the prospective juror's tone of voice and sees her demeanor." Franklin v. Anderson, 434 .3d 412, 427 (6th Cir. 2006). The exception to the rule occurs where the record conclusively shows "manifest error and does not merit the presumption of correctness normally due trial court factual findings." Id. at 428. This is a difficult standard to meet since the trial court's resolution of a juror's possible bias is entitled to "special deference." Patton v. Yount, 467 U.S. 1025, 1038 (1984).

The record makes clear Juror Ford (as well as many of the prospective jurors) had heard about the case. However, this does not make her unqualified to serve. As the Supreme Court observed almost a half century ago:

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Irvin v. Dowd, 366 U.S. 717, 723 (1961).

In this case, Juror Ford initially indicated that she "guessed" she could set aside what she had heard and later said that she would promise to try to put aside any preconceived notion. She also affirmatively told counsel for the defendant that she would listen to the evidence presented in determining guilt or innocence.

The fact that Petitioner guessed she could set aside what she had heard and later promised to do her best and listen to the evidence does not amount to such equivocation that the Court can conclude as a matter of law that Juror Ford was actually biased. The Sixth Circuit has indicated that,

when asked whether a particular juror can be fair, statements such as "I think I could be fair" are not necessarily construed as equivocation. Miller v. Francis, 269 F.3d 609, 618 (6th Cir. 2001). This is because "venire members commonly couch their responses to questions concerning bias in terms of 'I think'" and leave it to the judge to determine whether they are in fact impartial. Id. What is essential, is that the juror commit to deciding the case on the evidence, Patton, 467 U.S. at 1036, and Juror Ford told Petitioner's counsel she would listen to all of the evidence in deciding Petitioner's guilt and she promised to try to forget the rumors she heard and what she read in the newspaper.

As indicated, the record must demonstrably show actual bias and this record does not meet that level. The trial judge's ruling on this issue is entitled to special deference because, as the Supreme Court has explained:

> Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying. Any complicated voir dire calls upon lay persons to think and express themselves in unfamiliar terms, as a reading of any transcript of such a proceeding will reveal. Demeanor, inflection, the flow of the questions and answers can make confused and conflicting utterances comprehensible.

Yount, 467 U.S. at 1038, n. 14. The Tennessee Court of Criminal Appeal's decision is not contrary to or an unreasonable application of clearly established federal law. This objection is overruled.

**C. Objection 3**

The Magistrate Judge found Petitioner was not deprived of a fair trial because the state court judge allowed the State to exercise eight peremptory challenges.[3] Petitioner objects, claiming this

[3] Petitioner was also allowed eight peremptory challenges.



Case 2:07-cv-00047 Document 27 Filed 08/27/08 Page 8 of 11 PageID #: 3262

was a violation of the then-existing Tennessee Rules of Criminal Procedure 24(d) which allowed for four peremptory challenges by the State in non-capital, felony cases.

Peremptory challenges are creatures of state law and "it is for the State to determine the number of peremptory challenges allowed and to define their purpose and manner of their exercise." Ross v. Oklahoma, 487 U.S. 81, 89 (1988). "As such, the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." Id.

At the time of Petitioner's trial in October, 1996, Tenn. Crim. R. 24(d) provided that in non-capital felony cases, each defendant was entitled to eight peremptory challenges, while the state was entitled to four peremptory challenges. However, effective July 1, 1995, T.C.A. § 40-18-118 provided in relevant part as follows:

> ***Notwithstanding any other provision of law or rule of court to the contrary***, in any case in which a defendant is charged with an offense punishable by death, such defendant is entitled to fifteen (15) peremptory challenges and the state is entitled to fifteen (15) peremptory challenges for each such defendant. ***If the offense charged is punishable by imprisonment for more than one (1) year but not by death, each defendant is entitled to eight (8) peremptory challenges, and the state is entitled to eight (8) peremptory challenges for each defendant***.

T.C.A. § 40-18-118 (emphasis added). As the foregoing makes clear, the prevailing statute (which takes precedence over the criminal rule[4]) provided that the state was entitled to exercise eight peremptory challenges at Petitioner's trial. Accordingly, this objection is overruled.

**D. Objection 4**

In a one sentence objection, Petitioner claims he was denied a fair and impartial trial and cites for the objection the entire record of the underlying state court proceedings. This Court has

---

[4]Criminal Rule 24(d) was revised in 1997 to conform to the statute and provide both the prosecution and defense eight peremptory challenges in non-capital felony cases. See, Tenn. R. Crim. P. 24, Advisory Committee Comments.

reviewed the state court record and agrees with the Magistrate Judge that the record fails to disclose that Petitioner was deprived of a fair trial by an impartial jury of his peers. The Court also agrees with the Magistrate Judge that the state courts applied the proper legal analysis in deciding Petitioner's claims and their rulings were neither contrary to clearly established federal law nor an unreasonable application of federal law. No trial is error-free and the Constitution does not guarantee a perfect trial. United States v. Hastings, 461 U.S. 499, 508-09 (1983). This objection is overruled.

**5. Objection 5**

In his fifth objection, Petitioner claims the state court record would substantiate his claim for the necessity of a change of venue but that the state deliberately omitted the transcript of the change of venue hearing from the record which precluded appellate review of the issue by the state court. However, under the rules in effect at the time of Petitioner's appeal in the state court (and now), the burden was on the Petitioner to have an adequate record prepared in order to allow meaningful review on appeal. T.R.A.P. 24(b). Where a record is not prepared with respect to an issue under consideration, it is settled state law that the Tennessee appellate courts will not consider the issue. State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

On direct appeal, the Tennessee Court of Criminal Appeals noted there was no transcript of the hearing nor any discussion of the trial court's ruling on Petitioner's motion for a change of venue and that the issue was waived because it was not properly preserved. State v. Davidson, 2000 WL 622256 at *4 (Tenn. Crim. App. 2000).[5] Absent egregious harm or a fundamental miscarriage of

[5]The Tennessee Court of Criminal Appeals also found, based upon the limited evidence in the record, Petitioner did not establish that the trial court abused its discretion in denying the motion to change venue.

justice, "when a state court denies relief because a party failed to comply with a regularly applied and well-established state procedural rule, a federal court will not consider that issue [on habeas review]." Smith v. Texas, 127 S.Ct. 1686, 1697 (2007). This objection is overruled.

**F. Objection 6**

Petitioner's final objection states: "Exhibit, Pages 237, 242 Addendum # 2." (Docket Entry No. 26 at 2). Pages 232 and 242 of Addendum 2 appear to be handwritten strike lists from counsel for the Petitioner and the State. Both indicate eight strikes of potential jurors. As indicated previously, the statute allowed for eight strikes for both the Defendant and the State. This objection is overruled.

## III. CONCLUSION

On the basis of the foregoing, the R & R (Docket Entry No. 24) will be accepted, Petitioner's Objections thereto (Docket Entry No. 26) will be overruled, Respondent's Motion to Dismiss (Docket Entry No. 17) will be granted, and this case will be dismissed. Further, because Petitioner cannot demonstrate reasonable jurists would find the Court's assessment of his claimed violations of a right to a fair and impartial trial debatable or wrong, or that jurists of reason would find it debatable whether the Court was correct in its rulings that there were no constitutional infirmities in Petitioner's trial, a Certificate of Appealability will not issue. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE